Sergeant Major of the Army Gene
C. McKINNEY, United States
Army, Petitioner

v.

Colonel Robert L. JARVIS, Investigating
Officer; Colonel Owen C. Powell, Jr.,
Special Court–Martial Convening Authority; the United States Army; and
the United States of America, Respondents.

ARMY 9700991.

U.S. Army Court of Criminal Appeals.

3 July 1997.

For Petitioner: Charles W. Gittins (argued)(on original and supplemental briefs); Lieutenant Colonel V. Montgomery Forrester, JA; Lieutenant Colonel James Gerstenlauer, JA (on supplemental brief).

For Respondents: Captain John W. O'Brien, JA (argued); Lieutenant Colonel Eva M. Novak, JA; Major Fred P. Taylor, JA; Captain John M. Bergen, JA; Captain Chris A. Wendelbo, JA (on brief).

Before TOOMEY, GONZALES, and CARTER, Appellate Military Judges.

1. The military justice system, which requires that a person subject to the UCMJ prefer all charges against an accused and that a commander indi-

OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF PROHIBITION.

CARTER, Judge.

In a PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF PROHIBITION, petitioner asks this court to disqualify Colonel (COL) Owen C. Powell, Jr., from further action in respect to petitioner's pretrial hearing because he is both the accuser and the appointing authority for the pretrial investigating officer. For the reasons indicated below, petitioner's request for a writ of prohibition is denied. We hold that a convening authority who becomes an accuser by virtue of preferring charges in his official capacity as a commander is not, per se, disqualified from appointing a pretrial investigating officer to conduct a thorough and impartial investigation of those charges.

## I. HISTORY OF THE CASE

1. Colonel Powell, as the Commander of United States Army Garrison, Fort Myer, Virginia, is both the summary and special court-martial convening authority [hereinafter SPCMCA] over the petitioner. Articles 23(a) and 24(a), Uniform Code of Military Justice, 10 U.S.C. §§ 823(a) and 824(a) (1988) [hereinafter UCMJ]. On 24 February 1997, COL Powell withheld authority from two subordinate commanders to dispose of matters concerning the criminal investigation of petitioner. *See* Rule for Courts–Martial 306(a)[hereinafter R.C.M.] and Army Reg. 27–10, Legal Services: Military Justice, para. 3–7d (24 June 1996).

2. On 7 May 1997, COL Powell "preferred" charges against petitioner and thereby became the accuser in this case.[1] *See* R.C.M. 307(b) and UCMJ art. 1(9). On the same day, COL Powell appointed COL Robert L. Jarvis as the pretrial investigating officer pursuant to Article 32, UCMJ, and R.C.M. 405. Colonel Powell directed the investigating officer to close the pretrial hearing to spectators. *See* R.C.M. 405(h)(3).

vidually "convene" each trial, has no parallel in the civilian criminal justice system.

3. On 9 May 1997, the investigating officer scheduled the Article 32, UCMJ, hearing for 14 May 1997. On 13 May 1997, petitioner requested, and COL Powell granted, a delay in the Article 32, UCMJ, hearing until 23 June 1997. Petitioner also requested access by spectators at the pretrial hearing.

4. On 16 May 1997, COL Powell denied petitioner's request for an "open pretrial hearing" and again directed that the Article 32, UCMJ, hearing be closed to spectators. Colonel Powell also ordered the preparation of a verbatim transcript of the pretrial hearing.

5. On 19 May 1997, petitioner joined a petition for a writ of mandamus filed by several news organizations with the United States Court of Appeals for the Armed Forces seeking a reversal of COL Powell's decision to keep the Article 32, UCMJ, hearing closed to spectators. *See* R.C.M. 1204(a) discussion. On 20 June 1997, the Court of Appeals for the Armed Forces issued a stay in the Article 32, UCMJ, proceedings.

6. On 23 June 1997, the Court of Appeals for the Armed Forces heard oral arguments and ordered the Article 32, UCMJ, hearing opened to the public. The court lifted the stay of the Article 32, UCMJ, proceedings. That same day, the Article 32, UCMJ, hearing was rescheduled for 25 June 1997.

7. On 24 June 1997, petitioner again requested that COL Powell delay the Article 32, UCMJ, investigation and recuse himself as the SPCMCA in this case because he was the accuser. Petitioner also requested that all further discretionary decisions concerning the Article 32, UCMJ, proceedings be forwarded to the general court-martial convening authority (GCMCA). Petitioner's request noted that during oral argument before the Court of Appeals for the Armed Forces, two judges questioned the propriety of COL Powell acting in discretionary matters con-

cerning the Article 32, UCMJ, investigation because he was the accuser. Colonel Powell denied petitioner's request that same day.

8. On 25 June 1997, the Article 32, UCMJ, investigation began. Petitioner requested that the investigating officer delay the investigation until COL Powell's status could be appealed to this court. The investigating officer denied the requested delay, but granted petitioner a recess to file an appeal with this court.

9. Later, on 25 June 1997, petitioner filed a petition with this court for a writ of prohibition disqualifying COL Powell from further action in petitioner's Article 32, UCMJ, investigation. Alternatively, petitioner requested that this court issue a temporary restraining order staying all proceedings until the issue could be fully briefed and argued before this court. The petition did not cite any irreparable harm that would result to petitioner if this court failed to grant an immediate stay in the Article 32, UCMJ, proceedings.

10. On 26 June 1997, this court issued an order denying petitioner's request to stay the Article 32, UCMJ, hearing. The order also directed that the government respond to petitioner's request, and that the government's response, along with any supplemental brief by petitioner, be filed by 30 June 1997. Oral arguments were heard on 1 July 1997.[2]

## II. JURISDICTION

To exercise jurisdiction in this case, this court must find that the issues are matters within the scope of its statutory authority; that a writ of prohibition may be issued against the officer who appointed the Article 32, UCMJ, investigating officer; and, most importantly, that this case presents matters of such truly extraordinary circumstances that we should exercise our discretion and

2. Argument was granted on the issue raised by petitioner (Issue I) and a court specified issue (Issue II):

I. WHETHER RESPONDENT COLONEL OWEN C. POWELL (sic) ABUSED HIS DISCRETION BY CONVENING PETITIONER'S ARTICLE 32 INVESTIGATION AND PURPORTING TO ACT IN MATTERS REQUIRING THE EXERCISE OF DISCRETION WHERE RESPONDENT COLONEL POWELL PREFERRED THE CHARGES AGAINST PETITIONER AND, THEREFORE, IS THE ACCUSER.

II. WHETHER COLONEL POWELL WAS DISQUALIFIED FROM CONVENING THE ARTICLE 32, UCMJ, HEARING BECAUSE HE PREFERRED THE CHARGES.

consider the merits of petitioner's claims. *See generally, Evans v. Kilroy,* 33 M.J. 730 (A.F.C.M.R.1991) and *Pearson v. Bloss,* 28 M.J. 764 (A.F.C.M.R.1989).

■ Congress directed the creation of the military courts of criminal appeals. UCMJ art. 66. Another statute, commonly referred to as the All Writs Act, provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1992). Accordingly, this court has statutory jurisdiction to determine issues in aid of its jurisdiction under the All Writs Act and to ensure the integrity of the judicial system in Army courts-martial. R.C.M. 1203 discussion; *United States v. Curtin,* 44 M.J. 439, 440 (1996); *United States v. Boudreaux,* 35 M.J. 291, 294 (C.M.A.1992); *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979); *Brookins v. Cullins,* 23 U.S.C.M.A. 216, 49 C.M.R. 5, 6–7, 1974 WL 13989 (1974); *Hobdy v. United States,* 46 M.J. 653, 654 (N.M.Ct.Crim.App.1997); *United States v. Miller,* 44 M.J. 582, 583 (A.F.Ct. Crim.App.1996); *Ross v. United States,* 43 M.J. 770, 771–72 (N.M.Ct.Crim.App.1995); *United States v. Lewis,* 38 M.J. 501, 512–13 (A.C.M.R.1993), *aff'd,* 42 M.J. 1 (1995); *United States v. Gray,* 32 M.J. 730, 732 (A.C.M.R.), *pet. denied,* 34 M.J. 164 (1991).

■ A writ of prohibition is the "process by which a superior court prevents an inferior court or *tribunal possessing judicial or quasi-judicial powers* from exceeding its jurisdiction...." BLACK'S LAW DICTIONARY 1212 (6th ed.1990) (emphasis added). For purposes of this court exercising supervisory review in aid of its jurisdiction under the All Writs Act, an Article 32, UCMJ, pretrial investigation is a "judicial proceeding." *San Antonio Express–News v. Morrow,* 44 M.J. 706, 708–09 (A.F.Ct.Crim.App. 1996). It is judicial in nature. *United States v. Samuels,* 10 U.S.C.M.A. 206, 216, 27 C.M.R. 280, 286, 1959 WL 3613 (1959). The Article 32, UCMJ, investigation is a judicial proceeding and plays a necessary role in military due process of law. Dep't of Army, Pam. 27–17, Legal Services: Procedural Guide for Article 32(b) Investigating Officer,

para. 2–1(b) (16 Sep. 1990). Discretionary decisions by officers who appoint Article 32, UCMJ, investigations are also subject to review under the All Writs Act. *McKinney v. Jarvis,* —— M.J. ——, USCA Misc. Dkt. No. 97–8023/8024 AR (23 June 1997) (Order) (Court of Appeals for the Armed Forces reviewed and reversed investigating officer appointing authority's decision to close Article 32, UCMJ, hearing). Therefore, this court, in aid of its supervisory jurisdiction over Army courts-martial, has jurisdiction to issue a writ of prohibition against an officer who appointed the Article 32, UCMJ, investigating officer.

■ The most important question is why this court should exercise its authority to grant extraordinary relief in this particular case. The issuance of a writ under the All Writs Act is a "drastic remedy which should only be invoked in those situations which are truly extraordinary." *Aviz v. Carver,* 36 M.J. 1026, 1028 (N.M.C.M.R.1993); *Pearson,* 28 M.J. at 766. Historically, this court has sparingly issued writs of prohibition because they are an "extraordinary" form of relief that is not appropriate in most cases.

The petition before this court challenges the same person (COL Powell) serving as accuser and appointing authority for the Article 32, UCMJ, pretrial investigating officer in the same case. Having found no reported cases directly on point, we believe this to be a question of first impression. Additionally, during an earlier oral argument before our superior court, two judges questioned, sua sponte, COL Powell's continued participation in any discretionary capacity in the Article 32, UCMJ, proceedings because of his status as the accuser. Accordingly, we will entertain the merits of petitioner's request for a writ of prohibition.

### III. STANDARD OF REVIEW

■ The "extraordinary" nature of relief under the All Writs Acts places an "extremely heavy burden" upon the party seeking relief. *United States v. Mahoney,* 36 M.J. 679, 685 (A.F.C.M.R.1992). The issuance of such writs is generally not favored as they disrupt the orderly judicial process of

trial on the merits and then appeal. The petitioning party's right to relief must be "clear and indisputable." *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 662, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978); *Kerr v. United States District Court for the Northern District of California*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *Ross*, 43 M.J. at 771; *Gray*, 32 M.J. at 732. Petitioner must show that the complained of actions were more than "gross error" and constitute a *"judicial usurpation of power." San Antonio Express-News*, 44 M.J. at 709 (emphasis added). The ruling or action being challenged must be "contrary to statute, settled case law, or valid regulation." *Evans*, 33 M.J. at 733.

## IV. DISCUSSION

■ Commanders perform many different roles in the daily administration of military justice. For example, a commander may be an accuser, an investigator, an appointing authority, a convening authority, a reviewing authority, an appeal authority, an approving authority, or a superior authority. Depending on the facts, statutes, and regulations involved, a commander may legally perform more than one of these duties in the same case. In this case, petitioner challenges COL Powell's dual roles as accuser and appointing authority for the Article 32, UCMJ, investigating officer, and his discretionary actions thereunder.

Article 1(9), UCMJ, defines an "accuser" to include one who "signs and swears to charges, ... and any other person who has an interest other than an official interest in the prosecution of the accused." A person "prefers" charges as the accuser by signing a charge sheet and swearing that he either "has personal knowledge of, or has investigated, the matters set forth therein" and that the same are true to the best of his knowledge and belief. UCMJ art. 30(a); R.C.M. 307. It is uncontested that COL Powell is the accuser in this case because he preferred the charges against the petitioner.

The Congress and the President have disqualified the accuser from performing certain other responsibilities in the same case. An accuser may not convene, or serve as a member of, a general or special court-martial to try the charges that he preferred. UCMJ arts. 22(b), 23(b), and 25(d)(2). An accuser may not refer charges to a general or special court-martial. R.C.M. 601(c). An accuser may not act as a military judge in the same case. UCMJ art. 26(d). An accuser is disqualified from performing duties as trial counsel or as an Article 32, UCMJ, investigating officer. R.C.M.s 502(d)(4)(A) and 405(d)(1). An accuser may serve as defense counsel only "when expressly requested by the accused." R.C.M. 502(d)(4). An accuser may not serve in a court-martial as an interpreter, reporter, escort, bailiff, clerk, or orderly. R.C.M. 502(e)(2)(A). An accuser may not perform the judge advocate review required by R.C.M. 1112. R.C.M. 1112(c). With the exception of the disqualification of being the actual investigating officer, the duties foreclosed to the accuser by statute and the Rules for Court–Martial involve referral and post-referral functions in the court-martial process.[3]

Likewise, the Congress and the President have agreed that there are instances when an accuser may continue to perform military justice duties in the same case. A commander may prefer charges as the accuser and then forward those charges to his superior commander for disposition. The decision to forward to a superior commander requires that "a personal recommendation as to disposition" shall accompany the transmittal of those charges. R.C.M.s 307 and 401(c)(2)(A). Additionally, an accuser is not disqualified from convening a summary court-martial to try those same charges, and may even detail himself as the summary court-martial. UCMJ art. 24; R.C.M. 307(a) discussion; R.C.M. 401 discussion; R.C.M. 504(c)(1) discussion; R.C.M. 1302(b); R.C.M. 1302 discussion; and *United States v. Kajander*, 31 C.M.R. 479, 480, 1962 WL 4424 (C.G.B.R. 1962).

■ Any court-martial convening authority (summary, special, or general) may

---

3. "Referral" is the order by a non-disqualified convening authority that charges against a particular accused will be tried by a specified court-martial. *See* R.C.M. 601(a) discussion.

direct a pretrial investigation under Article 32, UCMJ. R.C.M.s 403(b)(5), 404(e), 405(c), and 407(a)(5). The Congress expressly disqualified an accuser from convening a special or general court-martial. UCMJ arts. 22(b) and 23(b). The President expressly disqualified an accuser from serving as investigating officer. R.C.M. 405(d)(1). Neither the President nor the Congress expressly disqualified an accuser from appointing the investigating officer.[4] Accordingly, we answer the court specified issue in the negative: Colonel Powell was not disqualified by statute or regulation from appointing the Article 32, UCMJ, investigating officer solely because he preferred the charges.

▪ However, when COL Powell became the accuser in this case, he lost his authority to convene a special court-martial to try these charges. UCMJ art. 23(b); R.C.M. 601(c); *United States v. Crews*, 49 C.M.R. 502, 1974 WL 14111 (C.G.C.M.R.1974). In addition, if he decides to forward the charges to a higher convening authority, he must note his disqualification. R.C.M. 401(c)(2)(A).[5] Colonel Powell may still offer petitioner nonjudicial punishment under Article 15, UCMJ, or refer the charges to a summary court-martial. However, each of these last two options requires petitioner's consent, and neither can result in petitioner's confinement or discharge from the Army. In fact, the only final disposition of these charges, other than administrative actions, that COL Powell can make without the consent of petitioner is to dismiss them.

Additionally, every commander has an obligation to dispose of charges at the lowest possible appropriate level. R.C.M. 306(b). A responsible appointing authority does not appoint an Article 32, UCMJ, investigating officer without first determining that the charges might warrant a general court-mar-

tial. R.C.M. 303; R.C.M. 306(c)(4). One of the purposes of the Article 32, UCMJ, investigation is to assist the appointing authority in making an appropriate disposition of the charges. R.C.M. 405(a) discussion. "[A] subordinate convening authority who directs an Article 32 investigation is not required to be absolutely neutral and detached. By ordering such an investigation, he has already determined that the offenses possibly merit a general court-martial. It is the investigating officer who must remain impartial." *United States v. Wojciechowski*, 19 M.J. 577, 579 (N.M.C.M.R.1984). Accordingly, COL Powell's preliminary review of the evidence as the accuser is not inconsistent with his responsibility to determine the appropriate disposition of the charges, nor is it inconsistent with his recognition, prior to appointing an Article 32, UCMJ, investigating officer, that the appropriate disposition might include a general court-martial.

One can become an accuser, even though he didn't prefer the charges, if he has an "interest other than an official interest" in the case. UCMJ art. 1(9). Petitioner argues, conversely, that because COL Powell is the accuser, he now has an "other than official interest" in the case's outcome. We reject petitioner's reverse logic.

The historical basis for this "other than an official interest" disqualification dates back to the eighteenth century and is well documented in *United States v. Gordon*, 1 U.S.C.M.A. 255, 2 C.M.R. 161, 163–66, 1952 WL 1711 (1952). In that case, our superior court stated that the test for determining if an "other than official interest" exists in a case is "whether, under the particular facts and circumstances ... a reasonable person would impute to [the accuser] a personal feeling or interest in the outcome of the litigation." *Gordon*, 1 U.S.C.M.A. at 260, 2 C.M.R. at

---

**4.** Unless an appellate court can discover a clearly expressed legislative intent to the contrary, the language of the statute must ordinarily be regarded as conclusive. *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). This general rule applies equally to Presidential Executive Orders. *See United States v. Leonard*, 21 M.J. 67, 69 (C.M.A.1985). Thus, when the language of the statute and executive order is plain and unambiguous, it is to be applied and

not interpreted. *United States v. Ware*, 1 M.J. 282, 285–86 (C.M.A.1976).

**5.** *United States v. Nix*, 40 M.J. 6, 7–8 (C.M.A. 1994), might be read to preclude a disqualified commander from making any recommendation regarding disposition. We note, however, that *Nix* involved a personal disqualification rather than a statutory disqualification.

166. *See also United States v. Nix,* 40 M.J. 6, 8 (C.M.A.1994); *United States v. Jeter,* 35 M.J. 442, 445 (C.M.A.1992); and *United States v. Conn,* 6 M.J. 351, 354 (C.M.A.1979) where this test was cited with approval.

In an affidavit admitted as part of these proceedings, COL Powell disavows any such personal interest in the outcome of this case (*see* Appendix). Petitioner offers no evidence that COL Powell has an "other than official interest" in the case except for the fact that he preferred the charges. Pretrial actions performed as "command functions embraced or reasonably anticipated" under the UCMJ do not as a matter of law constitute a personal interest requiring disqualification from further participation. *Conn,* 6 M.J. at 354. Accordingly, based on the record before us, we specifically hold that COL Powell has nothing but an official interest in the outcome of these charges.

█ Petitioner also asserts that COL Powell abused his discretion by making discretionary decisions concerning the conduct of the Article 32, UCMJ, investigation. The President has given a convening authority who appoints a pretrial investigating officer the expressed authority to "give procedural instructions not inconsistent with these rules." R.C.M. 405(c). Petitioner alleges that COL Powell "continues to exercise discretion for which he is not vested by virtue of his role as accuser." Petitioner does not allege, or attempt to prove, that the investigation or the investigating officer are not fair and impartial. Such generic allegations do not come close to satisfying petitioner's heavy burden to prove by "clear and indisputable" evidence that he is entitled to a writ of prohibition in this case.[6]

## V. DECISION

This court therefore holds:

1. Colonel Powell was not disqualified from appointing an Article 32, UCMJ, investigating officer because of his status as the accuser.

2. Petitioner has failed to produce "clear and indisputable" evidence that COL Powell's exercise of discretionary authority has denied petitioner a fair and impartial pretrial investigation or in any manner prejudiced the investigation.

Accordingly, petitioner's request for a writ of prohibition disqualifying COL Powell from further participation as the Article 32, UCMJ, appointing authority is DENIED.

Senior Judge TOOMEY and Judge GONZALES concur.

## APPENDIX

### AFFIDAVIT

Colonel Owen C. Powell, Jr., U.S. Army

I, Colonel Owen C. Powell, Jr., U.S. Army hereby attest that the following facts are true and correct to the best of my knowledge and belief:

1. I am the commander of the United States Army Garrison, Fort Myer, Virginia. In that capacity, I am also the commander of SMA Gene C. McKinney, Headquarters Company, U.S. Army, Fort Myer, Virginia. On 24 February 1997, pursuant to Rule for Courts–Martial, 306(a) and Army Regulation 27–10, Military Justice, Chapter 3, para. 3–7d (24 June 1996), I withheld the authority to dispose of matters concerning the criminal investigation of SMA McKinney from both the Commander, Headquarters Command, Fort Myer, Virginia and the Commander, Headquarters Company, U.S. Army, Fort Myer, Virginia.

---

**6.** We do not read R.C.M. 504(c)(1) and R.C.M. 601(c) in conjunction with R.C.M. 401(a) and R.C.M. 404(e) as disqualifying COL Powell from appointing the Article 32, UCMJ, investigating officer, as petitioner asserts. As discussed in this opinion, COL Powell, as the summary court-martial convening authority, may dispose of the charges by dismissing them, or he may direct an Article 32, UCMJ, investigation and then forward the report of investigation to a superior commander for disposition. Directing the Article 32, UCMJ, investigation is not a "disposition" of the charges; rather, it provides an impartial recommendation to the appointing authority upon which he may then discharge his responsibilities in determining how the allegations should best be disposed. *United States v. Bramel,* 29 M.J. 958 (A.C.M.R.), *aff'd,* 32 M.J. 3 (C.M.A.1990); R.C.M. 405(j)(2)(I).

2. The Commander, Headquarters Command, Fort Myer, Virginia is a summary court-martial convening authority under Article 24, UCMJ. However, in the matter of SMA McKinney, pursuant to Article 24(a)(1), UCMJ, I am acting as the summary court-martial convening authority because I have withheld authority to dispose of matters concerning the investigation of SMA McKinney from the Commander, Headquarters Command, Fort Myer, Virginia.

3. I am a person subject to the Uniform Code of Military Justice.

4. My personal knowledge of the matters set forth in the charges and specifications, which I preferred against SMA McKinney on 7 May 1997, is based upon my review of the Criminal Investigation Report (CID), 2d Interim, dated 7 April 1997.

5. I do not personally know any of the alleged victims, nor have I ever met or spoken to any one of them regarding the investigation of SMA McKinney. In addition, I have not met nor have I spoken to any of the other witnesses, to include those who provided sworn statements to CID or those who were interviewed by CID, regarding the investigation of SMA McKinney.

6. My decision to prefer charges against SMA McKinney and direct an investigation into these charges pursuant to Article 32(b), UCMJ, was not based, in any way whatsoever, on any bias or prejudice against him, but instead was based on the nature and severity of the allegations contained in the CID report.

7. Although I preferred charges against SMA McKinney, I do not have a predisposition as to the appropriate level of disposition. I will not make such a decision or recommendation as to appropriate disposition of the charges until I receive the recommendation of the Article 32 investigating officer and review the record of the pretrial investigation proceedings.

8. I have absolutely no personal interest in the matter of the investigation of SMA McKinney. I have only an official interest in the case as SMA McKinney's commander.

9. It was purely in my official capacity as SMA McKinney's commander that I preferred the charges and specifications against him and directed that an Article 32(b) investigation be conducted.

I swear under penalty of providing a false official statement that the above is true and accurate to the best of my knowledge and belief.

Original Signed
Owen C. Powell, Jr.
Colonel, U.S. Army
Garrison Commander

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 30 day of June 1997, at Fort Myer, Virginia.

Original Signed
MARK A. WILLIAMS
MAJ, AG
Adjutant, Fort Myer Military Community